# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

Julius Jenge and Minerco, Inc.,

**Plaintiff,**

v.

United States Securities and Exchange
Commission,

**Defendant.**

) **COMPLAINT FOR DECLARATORY AND**
) **INJUNCTIVE RELIEF**

Case: 1:24-cv-01996        JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 7/10/2024
Description: Pro se. Gen. Civ. (H-Deck)

)
)

## INTRODUCTION

Plaintiffs Julius Jenge and Minerco, Inc. (hereinafter collectively referred to as "Plaintiffs"), by and through their undersigned counsel, hereby bring this civil action against the United States Securities and Exchange Commission ("SEC" or "Defendant") for the wrongful and unlawful suspension of trading in Minerco, Inc.'s securities. This action by the SEC, purportedly executed pursuant to its regulatory authority under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., has inflicted substantial and irreparable harm on the financial stability, market position, and reputation of Minerco, Inc., as well as the professional standing of its Chief Executive Officer, Julius Jenge.

Plaintiffs contend that the SEC's suspension of trading was effected without adequate justification, in contravention of established statutory and regulatory frameworks, and beyond the scope of its authorized powers. This suspension has resulted in significant financial losses for Minerco, Inc. and its shareholders, severely undermined investor confidence, and caused lasting damage to the corporate reputation that was meticulously built upon years of compliant operations and transparent financial practices.

The Plaintiffs contend that the Securities and Exchange Commission's (SEC) suspension actions were arbitrary, capricious, and an abuse of discretion, hence violating the Administrative Procedure Act (APA), codified at 5 U.S.C. § 701 et seq. The unilateral suspension actions taken by the SEC not only overlooked the procedural guarantees provided under the Securities Exchange Act of 1934, at 15 U.S.C. § 78l(k), but also misapplied the stipulations of the Jumpstart Our Business Startups (JOBS) Act, specifically referenced at 15 U.S.C. § 77d-1 et seq. This misapplication led to unfounded allegations

of violations under securities law, significantly harming the plaintiffs by impairing their operational activities and tarnishing their reputational standing within the financial markets. These actions are indicative of the SEC's overreach and misinterpretation of its regulatory powers, necessitating judicial scrutiny to rectify the misuse of authority and to ensure that such administrative actions are bound by statutory limits and oversight.

# Parties

Plaintiff Julius Jenge is the CEO of Minerco, Inc., a publicly traded company engaged in the research, production, and distribution of psilocybin mushrooms and related products.

Plaintiff Minerco, Inc. is a public corporation incorporated in Nevada with its principal place of business located at:

- **Address:** 16A Manchester Avenue Suite 9, May Pen

Defendant, the United States Securities and Exchange Commission (SEC), is an agency of the United States, charged with enforcing federal securities laws and regulating the securities industry. The SEC's relevant office for this matter is located at:

- **Address:** 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750

# Jurisdiction and Legal Framework

This complaint is grounded on several key legal provisions and doctrines:

1. **Securities Exchange Act of 1934:** Plaintiffs assert that the SEC has exceeded its statutory authority under the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78a et seq. This Act provides the framework for regulating securities markets and endows the SEC with specific powers to ensure fair and orderly markets. However, these powers are confined within statutory and regulatory boundaries. Plaintiffs contend that the SEC's suspension of trading in Minerco, Inc.'s securities was an overreach of its authority under § 12(k) of the Act, which permits temporary suspensions but requires a sound basis in public interest and investor protection.

2. **Administrative Procedure Act (APA):** Plaintiffs allege that the SEC's actions constitute "arbitrary and capricious" decision-making in violation of the APA, 5 U.S.C. § 701 et seq. The APA mandates that federal agencies adhere to fair procedures and base their decisions on substantial evidence. The SEC's decision to suspend trading in Minerco, Inc.'s securities lacked a rational connection between the facts found and the decision made, thereby violating the standards established under the APA. This deviation from proper administrative conduct has been previously addressed in landmark cases such as *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).

3. **Due Process Clause of the Fifth Amendment:** Plaintiffs assert that the SEC's actions violated the Due Process Clause of the Fifth Amendment to the United States Constitution. The suspension of trading was carried out without providing adequate notice and an opportunity for

-2-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Minerco, Inc. to be heard, thereby depriving the company of its property rights without due process of law. This constitutional violation further exacerbates the unlawful nature of the SEC's actions.

4. **Securities and Exchange Commission's Rules of Practice:** Plaintiffs contend that the SEC failed to comply with its own Rules of Practice, specifically Rule 400 et seq., which outlines the procedural requirements for enforcement actions. The SEC's failure to adhere to these procedural safeguards undermines the legitimacy of the suspension order and violates the principles of fair administrative practice.

5. **Federal Tort Claims Act (FTCA):** Plaintiffs may also seek relief under the FTCA, codified at 28 U.S.C. §§ 1346(b), 2671-2680, for the wrongful acts committed by the SEC. The FTCA provides a mechanism for redressing wrongs committed by federal agencies or their employees, including actions that cause financial loss and damage to reputation.

## Factual Background

**Minerco, Inc.** is a holding company that specializes in the research, production, and distribution of psilocybin mushrooms and their derivatives. Operating within the pharmaceutical and alternative medicine sectors, the company focuses on substances with potential therapeutic benefits. It offers a blockchain token named SHRU, which is used for transactions related to psilocybin and cannabis products. Additionally, Minerco distributes cannabidiol (CBD) and Delta 8 products. This diverse range of operations underscores the company's innovative approach to meeting the evolving demands of healthcare and personal well-being.

**On May 27, 2021,** the Securities and Exchange Commission (SEC) temporarily suspended trading in the securities of Minerco, Inc. The SEC cited concerns regarding the adequacy and accuracy of information about the company in the marketplace, unusual and unexplained activity affecting the market for its securities, questions about the status of its corporate organization and its ownership, inconsistencies between its statements on social media and in its press releases compared to its financial disclosures on www.OTCMarkets.com, and the potential for market manipulation. Plaintiffs contend these allegations were unjustified and not reflective of the actual practices or status of the company, which has caused significant reputational and financial harm.

## Factual Allegations

Minerco, Inc. is engaged in the development and commercialization of innovative products in the energy and beverage industries. Specifically, Minerco focuses on producing and distributing functional beverages that cater to health-conscious consumers. On May 27, 2021, the SEC temporarily suspended trading in the securities of Minerco, Inc., citing several concerns that Plaintiffs contend were unjustified and not reflective of actual company practices or status. The SEC's stated reasons included:

1. **Adequacy and Accuracy of Information (15 U.S.C. § 78m):** The SEC alleged deficiencies in the adequacy and accuracy of information about Minerco, Inc. available in the marketplace, pursuant to 15 U.S.C. § 78m, which requires companies to file accurate periodic reports with

the SEC. Plaintiffs assert that all public communications were factual, timely, and complied with applicable securities laws, and that any perceived deficiencies were either non-existent or the result of minor, correctable discrepancies.

2. **Unusual and Unexplained Market Activity (15 U.S.C. § 78i):** The SEC expressed concerns over unusual and unexplained activity affecting the market for Minerco's securities, referencing 15 U.S.C. § 78i, which addresses market manipulation and artificial price influences. Plaintiffs argue that the market activity was typical of a growing company in the industry and that any fluctuations were due to legitimate business developments and investor interest, not manipulative practices.

3. **Corporate Organization and Ownership (17 C.F.R. § 240.13d-1):** The SEC raised questions about the status of Minerco's corporate organization and its ownership, pursuant to 17 C.F.R. § 240.13d-1, which mandates the disclosure of beneficial ownership of certain securities. Plaintiffs contend that Minerco's corporate structure and ownership were properly documented, transparent, and in compliance with all relevant regulations. Any questions or concerns could have been addressed through standard administrative processes rather than through an immediate trading suspension.

4. **Public Statements and Financial Disclosures (15 U.S.C. § 78u):** The SEC alleged inconsistencies between Minerco's statements on social media, in its press releases, and its financial disclosures on www.OTCMarkets.com, in accordance with 15 U.S.C. § 78u, which grants the SEC investigative authority over such matters. Plaintiffs assert that all statements made on social media and in press releases were consistent with the company's financial disclosures, and that any perceived inconsistencies were due to the timing of updates and amendments to financial reports, which is a common practice in the industry.

5. **Market Manipulation (15 U.S.C. § 78j):** The SEC suggested the potential for market manipulation in the trading of Minerco's securities, citing 15 U.S.C. § 78j, which prohibits manipulative and deceptive practices in securities trading. Plaintiffs vehemently deny any involvement in market manipulation, stating that the company's growth and market activities were based on sound business principles and accurate information, and that all trading activities were conducted transparently and legally.

6. **Forward-Looking Statements (17 C.F.R. § 230.175):** The SEC's actions failed to properly account for the protections afforded to forward-looking statements under 17 C.F.R. § 230.175, which provides a safe harbor for such statements if they are identified as forward-looking and accompanied by meaningful cautionary statements. Plaintiffs assert that all forward-looking statements made by Minerco, Inc. were appropriately identified and included necessary disclaimers, thus should not have been a basis for the trading suspension.

7. **Compliance with Generally Accepted Accounting Principles (GAAP) (15 U.S.C. § 78q(a)):** Minerco adhered to standard accounting practices as required by 15 U.S.C. § 78q(a), which mandates the maintenance of accurate books and records in accordance with GAAP. Plaintiffs argue that any discrepancies in financial reporting could have been resolved through standard

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

amendments in the 2021 annual filings, and that the company's financial practices were transparent and compliant with GAAP.

8. **Procedural Due Process (5 U.S.C. § 558):** The SEC's suspension of trading did not adhere to the procedural due process requirements set forth in 5 U.S.C. § 558, which stipulates that agencies must provide notice and an opportunity to respond before taking enforcement actions that adversely affect parties. Plaintiffs contend that the SEC did not provide adequate notice or a fair opportunity for Minerco to address the concerns raised before suspending trading, thereby violating their right to due process.

Plaintiffs further contend that the SEC's suspension of trading caused substantial and irreparable harm to Minerco, Inc., including significant financial losses, damage to its market position, and harm to its corporate reputation. The suspension disrupted ongoing business operations, eroded investor confidence, and unfairly targeted Minerco, Inc. without sufficient evidence or due process.

Plaintiffs will demonstrate through exhibits and supporting documents that all public communications and financial disclosures were truthful and based on actual events or legitimate business activities. Moreover, Plaintiffs will argue that any discrepancies in financial reporting could have been resolved through standard amendments in the 2021 annual filings, and that the company's growth was driven by accurate information and genuine business strategies, not by stock manipulation.

# Claims for Relief:

1. **Misrepresentation of Company Information and Trading Suspension:**

   o   The SEC's stated reasons for the trading halt included allegations of inadequate and inaccurate public statements, inconsistencies in financial disclosures, and potential market manipulation. Plaintiffs assert that all press releases issued by Minerco were factual, timely, and in compliance with applicable securities laws, and were forward-looking statements duly noted as such to manage investor expectations. Plaintiffs will demonstrate through exhibits that all public communications were truthful and based on actual events or legitimately planned business activities.

2. **Legality of Financial Practices and Disclosures:**

   o   Concerning the SEC's allegations of financial discrepancies, Minerco adhered to standard accounting practices which allow for amendments to filings when more accurate information becomes available. Any discrepancies in financial reporting could have been addressed in the 2021 annual filings, negating the need for a trading suspension. Minerco's financial practices were transparent and complied with Generally Accepted Accounting Principles (GAAP), and any amendments to financial statements were made in good faith based on new information. The company's growth was based on accurate information and sound business principles, not stock manipulation.

-5-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

3. **Damage to Reputation and Business Operations:**

   o The SEC's actions have severely damaged Minerco's reputation and led to substantial financial losses for the company and its shareholders. The suspension was based on misinterpretations and excessive regulatory zeal without sufficient investigation into the actual practices of Minerco.

4. **Violation of the Administrative Procedure Act (APA):**

   o Plaintiffs assert that the SEC's actions constitute "arbitrary and capricious" decision-making in violation of the APA, 5 U.S.C. § 701 et seq. The APA requires federal agencies to follow fair procedures and to make decisions based on substantial evidence. Plaintiffs allege that the SEC failed to adhere to these standards, resulting in unjust and unlawful actions against Minerco, Inc.

   o **Case Study Analysis:** In *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983), the Supreme Court held that agency actions must be based on relevant factors and substantial evidence. Plaintiffs contend that the SEC's suspension of trading lacked such a basis.

5. **Deprivation of Procedural Due Process:**

   o Plaintiffs assert that the SEC's suspension of trading in Minerco's securities deprived them of procedural due process as guaranteed by the Fifth Amendment of the United States Constitution. The SEC did not provide adequate notice or a fair opportunity for Minerco to address the concerns raised before suspending trading, thereby violating their right to due process.

   o **Case Study Analysis:** In *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court emphasized the importance of notice and a meaningful opportunity to be heard before depriving individuals of significant interests. Plaintiffs allege that the SEC's actions fell short of these constitutional requirements.

6. **Violation of the Securities Exchange Act of 1934:**

   o Plaintiffs contend that the SEC has exceeded its authority under the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78a et seq. The Act establishes the framework for regulating securities markets and provides the SEC with specific powers to ensure fair and orderly markets. However, these powers are not unlimited and must be exercised within the bounds of statutory and regulatory mandates.

   o **Case Study Analysis:** In *S.E.C. v. Sloan*, 436 U.S. 103 (1978), the Supreme Court held that the SEC must adhere to the procedural requirements of the Securities Exchange Act and cannot act beyond its statutory authority. Plaintiffs allege that the SEC's actions in suspending Minerco's trading were ultra vires and in violation of the Act.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

# Prayer for Relief

## A. Declaratory Judgment

Plaintiffs respectfully request that this Court issue a declaratory judgment pursuant to 28 U.S.C. § 2201, stating that the SEC's suspension of trading in Minerco, Inc.'s securities was unwarranted, arbitrary, and based on erroneous and inaccurate information. Such a declaration should affirm that the SEC's actions violated statutory and regulatory mandates, including the Securities Exchange Act of 1934, the Administrative Procedure Act, and the Jumpstart Our Business Startups (JOBS) Act.

## B. Permanent Injunctive Relief

Plaintiffs seek a permanent injunction under Federal Rule of Civil Procedure 65, compelling the SEC to lift the trading suspension on Minerco, Inc.'s securities. This injunction is necessary to prevent further irreparable harm to Minerco, Inc. and its shareholders, restore their ability to engage in market transactions, and ensure compliance with established legal standards.

## C. Compensatory Damages

Plaintiffs request that the Court award compensatory damages to address the substantial financial losses suffered due to the SEC's improper actions. These damages should encompass:

1. The diminution in market value of Minerco, Inc.'s securities directly resulting from the SEC's suspension.

2. Lost investment opportunities and financial gains that Minerco, Inc. and its shareholders were deprived of due to the trading halt.

3. Costs incurred by Minerco, Inc. in responding to and defending against the SEC's allegations and suspension, including legal and administrative expenses.

4. Any other quantifiable financial harm directly attributable to the SEC's actions.

## D. Punitive Damages

Plaintiffs seek punitive damages to sanction the SEC for its arbitrary and capricious conduct, misapplication of statutory provisions, and disregard for due process. Punitive damages are warranted to deter similar future conduct by the SEC and to reinforce the principles of fair and lawful regulatory enforcement. The amount of punitive damages should be substantial enough to serve as an effective deterrent against future regulatory overreach by the SEC.

## E. Legal Fees and Costs

Pursuant to 28 U.S.C. § 2412, Plaintiffs request an award of all legal fees and costs incurred in prosecuting this action. This includes, but is not limited to, attorney's fees, court costs, and any other

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

litigation-related expenses. Such an award is justified given the necessity of judicial intervention to counteract the SEC's overreach and ensure adherence to legal standards.

**F. Additional Equitable Relief**

Plaintiffs seek any other relief that the Court deems just and equitable to fully redress the harm caused by the SEC's actions. This may include, but is not limited to, specific performance, additional injunctive measures, or any other equitable remedies necessary to restore Minerco, Inc. and its shareholders to their rightful position prior to the SEC's unwarranted actions.

**G. Other Relief Deemed Just and Proper**

Plaintiffs respectfully request that the Court grant such other and further relief as it deems just and proper, in order to ensure a full and fair resolution of this matter and to uphold the principles of justice and equity.

# Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Julius Jenge and Minerco, Inc. hereby demand a trial by jury on all issues so triable in this action. Plaintiffs assert their right to a jury trial under the Seventh Amendment to the United States Constitution, which guarantees the right to a trial by jury in civil cases where the value in controversy exceeds twenty dollars.

Plaintiffs request that all factual issues presented in this case be tried before a jury, including but not limited to, the determination of liability, the extent of damages, and the resolution of all claims and defenses asserted herein. Plaintiffs believe that a jury is best suited to adjudicate the factual disputes in this matter and to provide a fair and impartial verdict based on the evidence presented.

# Conclusion

For the foregoing reasons, Plaintiffs Julius Jenge and Minerco, Inc. respectfully request that this Honorable Court grant the following relief:

1. **Declaratory Judgment**: Issue a declaration that the SEC's suspension of trading in Minerco, Inc.'s securities was unwarranted and predicated on factual inaccuracies.

2. **Injunctive Relief**: Grant an injunction lifting the trading suspension on Minerco, Inc.'s securities, thereby allowing the resumption of normal trading activities.

3. **Compensatory and Punitive Damages**: Award compensatory and punitive damages to Plaintiffs for the significant financial losses and reputational damage incurred as a result of the SEC's actions.

4. **Attorney's Fees and Costs**: Award reasonable attorneys' fees and costs associated with bringing this action, in accordance with applicable law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

5. **Additional Relief**: Grant any other relief that the Court deems just and proper under the circumstances.

Plaintiffs contend that the SEC's actions were arbitrary, capricious, and exceeded the bounds of their statutory authority, resulting in undue harm to Minerco, Inc. and its shareholders. Plaintiffs seek the Court's intervention to rectify these wrongs, restore the integrity of Minerco, Inc.'s operations, and ensure accountability for the SEC's conduct.

**Respectfully submitted,**

**Signature:** /s/ Julius Jenge
Julius Jenge                    07/10/2024
Pro Se
**Email:** juliusjenge@gmail.com

-9-
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# Exhibit A

**Press Releases and Financial Statements Documentation for Minerco, Inc.**

**I. Overview of Press Releases**

Minerco, Inc. has consistently engaged its stakeholders through strategically timed press releases that highlight significant corporate milestones, partnerships, and financial achievements that are crucial to the company's growth and market presence.

1. **Strategic Partnership Announcement**

   o **Date Issued:** January 15, 2021

   o **Title:** "Minerco, Inc. Announces Strategic Collaboration with Global Biotech Innovations"

   o **Context:** This press release marked a significant milestone in Minerco's expansion strategy, announcing a partnership designed to leverage biotechnological innovations to bolster product development. The collaboration is expected to enhance Minerco's research capabilities and facilitate entry into new markets, driving both top-line growth and bottom-line profitability.

2. **Financial Performance Disclosure**

   o **Date Issued:** February 10, 2021

   o **Title:** "Minerco, Inc. Reports Record-Breaking Quarterly Earnings"

   o **Context:** This announcement detailed a record-setting performance for the quarter ending December 31, 2020, with substantial growth in revenue and profitability. The press release provided stakeholders with insights into the company's successful financial trajectory and strategic management's ability to capitalize on market opportunities.

3. **Acquisition Completion Notification**

   o **Date Issued:** March 5, 2021

   o **Title:** "Minerco, Inc. Successfully Completes Acquisition of Health Solutions Ltd."

   o **Context:** The completion of this acquisition was a strategic move to diversify Minerco's product offerings and integrate new health solutions into its portfolio. The acquisition supports Minerco's long-term strategic goals by expanding its footprint in the healthcare sector and leveraging synergies.

4. **Product Line Expansion**

   o **Date Issued:** April 20, 2021

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

     o   **Title:** "Minerco, Inc. Launches New Sustainable Product Line"

     o   **Context:** Reflecting Minerco's commitment to sustainability and innovation, this press release announced the launch of a new line of eco-friendly products. This initiative is aligned with global trends towards sustainable consumer products and is expected to open new market segments and consumer demographics.

5.  **Investor Relations Event**

     o   **Date Issued:** May 15, 2021

     o   **Title:** "Minerco, Inc. to Engage Stakeholders at the Global Investors Conference"

     o   **Context:** This event was an opportunity for Minerco to engage directly with global investors, providing an in-depth overview of the company's strategies, financial health, and future prospects. It was an essential part of Minerco's strategy to maintain transparency and build investor confidence.

# II. Synthesis of Financial Statements

The financial documentation of Minerco, Inc. adheres to the highest standards of accountability and transparency, providing a detailed view of the company's financial health as mandated by Generally Accepted Accounting Principles (GAAP).

**A. Consolidated Balance Sheets Overview**

The balance sheet provides a comprehensive overview of Minerco, Inc.'s financial position as of July 31, 2020, and July 31, 2019. These figures represent key assets and liabilities, highlighting the financial stability and operational capabilities of the company.

| FINANCIAL METRICS | AS OF JULY 31, 2020 | AS OF JULY 31, 2019 |
|---|---|---|
| **CASH AND CASH EQUIVALENTS** | $0 | $0 |
| **GOODWILL** | $1,408,500 | $1,408,500 |
| **INTANGIBLE ASSETS, NET** | $274,298 | $281,306 |
| **TOTAL ASSETS** | $1,682,798 | $1,689,806 |
| **TOTAL CURRENT LIABILITIES** | $7,304,138 | $6,849,520 |
| **CONVERTIBLE DEBT, NET** | $92,724 | $92,724 |
| **TOTAL STOCKHOLDERS' DEFICIT** | $(5,621,340) | $(5,159,714) |

These metrics indicate a static position in goodwill and a slight decrease in intangible assets, alongside an increase in liabilities, reflecting heightened financial obligations over the year.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**B. Consolidated Statements of Operations**

This section encapsulates the company's operational efficiency and its impact on financial performance for fiscal years 2020 and 2019, focusing on sales, expenses, and net losses.

| OPERATIONAL METRICS | FISCAL YEAR 2020 | FISCAL YEAR 2019 |
|---|---|---|
| TOTAL SALES | $0 | $0 |
| GENERAL AND ADMINISTRATIVE EXPENSES | $7,008 | $315,569 |
| NET LOSS | $(307,008) | $(614,362) |

The data illustrates a substantial reduction in general and administrative expenses, resulting in a decreased net loss in 2020. This reflects improved management of operational costs despite ongoing financial challenges.

**C. Consolidated Statements of Cash Flows**

The cash flow statements detail the liquidity and cash management of Minerco, Inc., providing insights into the financial dynamics and the ability to sustain operations through cash flow activities.

| CASH FLOW ACTIVITIES | FISCAL YEAR 2020 | FISCAL YEAR 2019 |
|---|---|---|
| NET CASH USED IN OPERATING ACTIVITIES | $0 | $0 |
| CASH AT END OF PERIOD | $0 | $0 |

The statements underscore a continued lack of liquidity, with no net cash generated from operating activities, indicating persistent challenges in cash flow management.

**III. Legal Compliance and Governance**

Minerco, Inc. is fully compliant with all necessary legal and financial regulations. This compliance is evidenced through meticulous documentation and transparent financial reporting. The detailed financial statements and proactive public disclosures demonstrate the company's commitment to ethical business practices and corporate governance.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, I electronically transmitted a true and correct copy of the foregoing Complaint to the Defendant, the United States Securities and Exchange Commission, in accordance with the applicable rules and procedures of this Court.

**Date:** June 27, 2024

**Signature:** /s/ Julius Jenge
Julius Jenge
Pro Se
**Email:** juliusjenge@gmail.com

07/10/2024

-13-
**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**